Joseph A. Mundy v. Commissioner. Dolores Mundy v. Commissioner. Frances Chisko Mundy v. Commissioner.
Mundy v. Commissioner
Docket Nos. 46998, 50098, 50099.
United States Tax Court
T.C. Memo 1955-270; 1955 Tax Ct. Memo LEXIS 65; 14 T.C.M. (CCH) 1067; T.C.M. (RIA) 55270; September 30, 1955
*65 1. Held: Joseph A. Mundy failed to sustain his burden of proof with respect to the deficiencies determined for the years 1947 through 1951. Accordingly, those deficiencies (with some adjustments) are sustained. 2. Held: The failure of Joseph A. Mundy to report income received in each of the years 1947 through 1951 was due to fraud with intent to evade tax. 3. Held: Dolores Mundy and Frances Chisko Mundy are not liable as transferees for income taxes of Joseph A. Mundy. 4. Held: Joseph A. Mundy is liable for increased deficiencies and additions to tax for the years 1950 and 1951. John R. Reap, Jr., Esq., Miners Bank Building, Pittston, Pa., for the petitioners. William G. Handfield, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: These consolidated proceedings involve deficiencies in income tax, additions to tax, and transferee liabilities as follows: Docket No. 46998 - Joseph A. Mundy
Additions to Tax
Secs. 291(a),
Section
294(d)(1)(A),
Year
Deficiency
293(b)
294(d)(2)
1947
$ 509.00
$ 254.50
$ 258.69
1948
332.00
166.00
136.12
1949
99.00
49.50
40.59
1950
1,144.22
572.11
469.13
1951
4,794.22
2,397.11
1,965.03
Docket No. 50098 - Dolores Mundy Transferee liability for income taxes of Joseph A. Mundy for the year 1950 in the amount of $1,144.22 and additions to tax in the amount of $605.78. Docket No. 50099 - Frances Chisko Mundy Transferee liability *67 for income taxes and additions to tax of Joseph A. Mundy as set forth above for the years 1947 through 1951. Respondent has made a jeopardy assessment of the deficiencies and additions to tax of Joseph A. Mundy, Docket No. 46998, pursuant to section 273, Internal Revenue Code of 1939. Petitioner Joseph A. Mundy has conceded liability for additions to tax pursuant to sections 291(a), 294(d)(1)(A), and 294(d)(2), Internal Revenue Code of 1939. The Commissioner has made claim for increased deficiencies and additions to tax for the years 1950 and 1951 by amendments to the answers in Joseph A. Mundy, Docket No. 46998, and Frances Chisko Mundy, Docket No. 50099, in which he claims that the tax liability of Joseph A. Mundy for those years was incorrectly computed on the basis of joint returns and should have been computed on the basis of separate individual returns. The increased amounts as claimed by respondent are as follows: Additions to Tax
Sections
Sec-
291(a),
tion
294(d)(1)(A),
Year
Deficiency
293(b)
294(d)(2)
1950
$1,994.11
$ 997.06
$ 817.59
1951
6,878.83
3,439.42
2,810.32
The issues in these proceedings are: (1) *68 Whether Joseph A. Mundy realized taxable income in each of the years 1947 through 1951 and, if so, the amounts thereof. (2) Whether Joseph A. Mundy failed to report income received during each of the years 1947 through 1951 with intent to evade tax. (3) Whether Frances Chisko Mundy is liable as transferee for the taxes and additions to tax of Joseph A. Mundy for the years 1947 through 1951. (4) Whether Dolores Mundy is liable as transferee for the tax and additions to tax of Joseph A. Mundy for the year 1950 in the respective amounts of $1,144.22 and $605.78. (5) Whether Joseph A. Mundy and Frances Chisko Mundy are liable for increased deficiencies and additions to tax for the years 1950 and 1951. Findings of Fact Some of the facts were stipulated and are so found. Joseph A. Mundy (hereinafter sometimes referred to as petitioner) and Frances Chisko Mundy are husband and wife residing at 99 Pioneer Avenue, Shavertown, Pennsylvania. Dolores Mundy of the same address is their daughter. Joseph A. Mundy filed no Federal income tax returns for the taxable years 1947 through 1951. During the years reviewed the petitioner was engaged in the promotional activity connected with *69 policemen's balls sponsored by policemen's associations in Luzerne County, Pennsylvania. In promoting these dances petitioner procured the advertising for the program and sold tickets to the affair. In addition, he solicited donations to the policemen's associations. The advertisers, ticket purchasers, and donors usually mailed their checks directly to the policemen's associations. The promotion of each affair for which petitioner received a flat fee of $500 required approximately six to eight weeks. During the years 1947 through 1951 petitioner kept no books or records and maintained no bank accounts. Petitioner was known throughout his community during these years as a drug salesman. From January 1943 to January 1952 petitioner rented a safety deposit box in the Forty Fort State Bank, Forty Fort, Pennsylvania, and from February 1944 to February 1952 petitioner and his wife rented a safety deposit box in the Miners National Bank, Wilkes-Barre, Pennsylvania. Petitioner attended college for two years in 1929 and 1930. Thereafter he was variously employed during the period 1930 through 1940, as a hospital attendant, a timekeeper, a poolroom operator, a state government clerk, and *70 a "Fuller Brush" salesman. At the end of that period petitioner had savings not in excess of $2,500. From 1941 through 1946 petitioner assisted in promoting policemen's balls in Luzerne County, Pennsylvania, as follows: 1941 through 1943 one ball each year; 1944 four balls; 1945 five balls; 1946 six balls. In addition, during the years 1941 through 1943 petitioner worked without pay in his mother's drugstore. In those years he maintained a home with his mother and apart from his wife and daughter. Petitioner's mother provided his living expenses and spending money during the time he lived with her. In 1944 petitioner acquired a cottage at Harvey's Lake near Wilkes-Barre, Pennsylvania, for $1,500. Petitioner made cash expenditures during the years 1947 through 1951 as follows: 1947
1948
1949
1950
1951
Lot - Shavertown
$2,000.00
Home - Shavertown
$12,588.02
Martin Electric Co.
165.66
Oscar Davis, Plumbing
360.00
W. Davis - Driveway
250.00
Luzerne, Lackawanna
Plumbing Co.
2,031.59
R. B. Shaver & Son
$ 346.75
Misericordia College
200.00
200.00
Lot - Harvey's Lake
$200.00
Metzgar - Shavertown
30.00
Back Mountain
Lumber Co.
113.44
52.08
32.07
H. S. Daron
478.39
5.60
St. Theresa's Church
Donations
44.35
60.00
87.00
Hadzel - Carpenter
150.00
Improved Cottage,
Harvey's Lake
5,000.00
Automobiles: 1947 Hudson
$2,067.71
1948 Hudson
802.83
1950 Hudson
948.95
1951 Hudson
1,044.00
Total
$2,067.71
$1,741.41
$302.03
$8,358.95
$16,788.34
*71 Included in the $12,588.02 above listed as expended in 1951 for a home in Shavertown is $4,000 which amount was loaned to petitioner by his wife in that year. In addition to the foregoing petitioner had annual expenses in the years 1947 through 1951 for food, clothing, fuel, real estate and local personal taxes, life and automobile insurance, telephone, gas and oil, water and electricity, in an amount not less than $2,100 per year. In 1951 petitioner expended at least $1,000 cash for furniture for his new house at 99 Pioneer Avenue, Shavertown, Pennsylvania. In 1948 petitioner received as a gift from his brother-in-law an Oldsmobile car which he subsequently sold for $600. On December 15, 1950 Joseph and Frances acquired real estate as tenants by the entirety at 99 Pioneer Avenue, Shavertown, Pennsylvania. Petitioner paid $2,000 cash for this property, which amount is included in the above schedule. In 1951 petitioner transferred to his daughter Dolores the Hudson automobile for which he paid $1,044 during that year. Petitioner received income during the years 1947 through 1951 in the amount of at least $3,500 in 1947 and at least $4,000 in each of the years 1948 through *72 1951 from promoting policemen's balls. Petitioner's failure to report income received in each of the years 1947 through 1951 was due to fraud with intent to evade tax. Opinion Respondent determined deficiencies in Joseph A. Mundy's income tax, together with additions to tax under sections 293(b), [1]291(a), 294(d)(1)(A), and 294(d)(2), Internal Revenue Code of 1939, for the years 1947 to 1951, inclusive. Respondent sent notices of liability to Frances Chisko Mundy and Dolores Mundy as transferees of certain assets of Joseph A. Mundy. By amended pleadings respondent claimed increased deficiencies and additions to tax from Joseph A. Mundy and Frances Chisko Mundy for the years 1950 and 1951. Petitioner has conceded liability for additions to tax under sections 291(a), 294(d)(1)(A), and 294(d)(2), Internal Revenue Code of 1939. *73 The first question with which we are presented is whether petitioner realized taxable income in each of the years in question and, if so, the amounts thereof. Petitioner argues that when the Commissioner employs the method here used to reconstruct net income for any given year, he must establish the taxpayer's net worth at the beginning of the period. In our view a determination of petitioner's beginning net worth was not necessary under the method here employed. Respondent determined the deficiencies by the so-called "expenditures" method [2] whereby petitioner's income for the years 1947 through 1951 was computed on the basis of his expenditures and estimated personal living expenses during those years. Where, as in the instant case, no books or records are kept respondent is justified in using any reasonable method in order to determine what income was received by the taxpayer. While the method employed herein carries with it the implication that the petitioner did not make any of his expenditures from wealth accumulated prior to the year 1947, such method does not appear unreasonable on its face. Nor does the fact that certain adjustments in the computation are necessary support *74 a finding that respondent has acted arbitrarily. We therefore reject this contention of petitioner and hold that the burden of proving error in respondent's determination rested upon petitioner. It has been stipulated that petitioner made cash expenditures in the years 1947 through 1951 as follows: Year
Amount
1947
$ 2,067.71
1948
1,741.41
1949
302.03
1950
8,358.95
1951
16,788.34
In addition to the foregoing petitioner has admitted certain annual expenses for food, clothing, fuel, real estate and local personal taxes, life and automobile insurance, telephone, gas and oil, water and electricity, which we have found amounted to at least $2,100 per year. We have also found that petitioner paid not less than $1,000 cash in 1951 for furniture for use in his new home at 99 Pioneer Avenue, Shavertown, Pennsylvania. Petitioner testified that his total cash outlay for new furniture was approximately $100. However, the uncontradicted testimony of respondent's special agent shows that this expenditure was previously admitted by *75 petitioner to be at least $1,000. It is inconceivable that petitioner would buy a lot for $2,000, construct upon it a house costing more than $15,000, and then furnish the house with old wornout furniture from his Harvey's Lake cottage as he claims. Petitioner contends that as a promoter of policemen's balls he earned $3,500 in 1947 and $4,000 in each of the years 1948 through 1951, and that any expenditures beyond this income were from savings or from gifts and loans made to him. We have found that petitioner was loaned $4,000 in 1951 by his wife for use in building their home and to that extent the expenditures for 1951 must be modified. Petitioner further claims that he received in 1948 as a gift from his brother-in-law an Oldsmobile car which he subsequently sold for $600. Petitioner has not proved the year of the sale or even that the sale was in the period reviewed. [3] Accordingly, no adjustment can be made for these receipts. Petitioner has also failed to prove that any of the sums expended during the period 1947 through 1951 were from savings. He claims *76 that he deposited $15,000 in a safety deposit box in the Forty Fort State Bank, Forty Fort, Pennsylvania, in 1943 and that those funds were expended during the period involved primarily for his new home in Shavertown. The record is completely devoid of any reliable evidence upon which we might base such a finding. Petitioner produced no witnesses or records of these alleged cash savings and testified only in a general way from imprecise recollection. Moreover, it was clearly shown that the nature of petitioner's employment from 1930 through 1940 did not lend itself to savings which would approximate $15,000. We have found that at the end of that period petitioner had savings not to exceed $2,500. Likewise, petitioner's employment from 1941 through 1946 would not support a finding of substantial savings. Indeed it is not unreasonable to conclude that any accumulated funds were exhausted during those years, especially in view of the purchase in 1944 of the Harvey's Lake cottage for $1,500. Accordingly, the deficiencies determined by respondent, as modified, are sustained. We have found that petitioner's failure to report income received in each of the years 1947 through 1951 was *77 due to fraud with intent to evade tax. We think our finding is supported by clear and convincing evidence. Petitioner failed to file Federal income tax returns for each of the years 1947 through 1951. He admitted in his pleadings that he received some income in each of those years and at the hearing testified that he received $3,500 in 1947 and $4,000 in each of the years 1948 through 1951. The only excuse offered by petitioner for his failure to report income was that he thought that by paying the Federal amusement tax on the tickets to the benefit balls he was discharging his income tax obligation. On brief petitioner contends that his "abysmal ignorance" negatives any intent to evade tax. In our view it has been amply demonstrated that petitioner did not possess the traits of "abysmal ignorance" but on the contrary was a man of at least normal intelligence. He completed the normal required educational courses and subsequently completed two years at college. It is hardly conceivable that a normal individual with this educational background could fail to realize in 1947 or in any succeeding year that he was liable for an income tax. The following language from Arlette Coat Co., 14 T.C. 751, 756, *78 is appropriate here: "Where, over a course of years an intelligent taxpayer and business man has received income in substantial amounts, as shown by this record, and has failed to report that income, and where no books or records were kept by him and no tenable explanation was offered for the failure to report the income received, the burden of the respondent, in our judgment, is fully met. We think this conclusion is amply supported by authority. * * *" Respondent has failed to prove that any transfers of assets by petitioner to his wife and daughter resulted in petitioner's insolvency or were made at a time when petitioner was insolvent. Accordingly, we are unable to find that Frances Chisko Mundy and Dolores Mundy are liable as transferees for income taxes of petitioner. Terrace Corporation, 37 B.T.A. 263; James M. Denton, 21 T.C. 295. By amended answer respondent claims increased deficiencies and additions to tax from Joseph A. Mundy and Frances Chisko Mundy for the years 1950 and 1951, alleging that the tax liability of Joseph A. Mundy was improperly computed on the basis of joint tax returns and should have been computed on the basis of individual *79 returns. As we have hereinabove indicated, Frances Chisko Mundy is not liable as a transferee for income taxes of Joseph A. Mundy and hence is not liable for increased deficiencies and additions to tax, if any. Under section 51(b)(1), [4] Internal Revenue Code of 1939, a husband and wife may elect to make a "single return jointly." That election must be exercised by the taxpayers at the time the return if filed. Therefore, as Joseph A. Mundy filed no income tax returns for these years the split income provisions were never elected by him. Accordingly, we hold that Joseph A. Mundy is liable for increased deficiencies and additions to tax for the years 1950 and 1951 to be computed on the basis of individual returns. Decisions will be entered under Rule 50. Footnotes
1. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * * *
(b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2).↩
2. Approved in United States v. Johnson, 319 U.S. 503. Cf. United States v. Caserta, 199 Fed. (2d) 905↩.
3. Paragraph 5(e) of the amended petition, denied by respondent, states that this automobile was sold in 1949.↩
4. SEC. 51. INDIVIDUAL RETURNS. * * *
(b) Husband and Wife. - (1) In general. - A husband and wife may make a single return jointly. Such a return may be made even though one of the spouses has neither gross income nor deductions. If a joint return is made the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several.↩